UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHIGAN MILLERS MUTUAL INSURANCE COMPANY,

                        Plaintiff,

    vs.

EXTREME LAND DEVELOPMENT, INC., RUSSELL BROACH III AND JILL BROACH,

                        Defendants.

**COMPLAINT**

Index No. _____

---

Plaintiff, MICHIGAN MILLERS MUTUAL INSURANCE COMPANY, by and through its attorneys HURWITZ FINE P.C. as and for its Complaint herein, alleges, upon information and belief, as follows:

1. This is an insurance coverage matter seeking a judicial declaration as to the rights and obligations of the parties under a certain insurance policies issued by MICHIGAN MILLERS MUTUAL INSURANCE COMPANY ("Michigan Millers") to EXTREME LAND DEVELOPMENT, INC. ("Extreme Land"), following an alleged incident on or about February 8, 2023, in which Extreme Land allegedly cut down approximately 63 trees on property owned by Russell Broach III and Jill Broach without their knowledge or permission ("Underlying Incident").

## PARTIES

2. At all times hereinafter mentioned, Plaintiff, MICHIGAN MILLERS MUTUAL INSURANCE COMPANY ("Michigan Millers"), was and is a domestic insurance company organized and existing under the laws of the State of Michigan and authorized to issue insurance policies in the State of New York.

3. Upon information and belief, now and at all times hereinafter mentioned, Defendant, EXTREME LAND DEVELOPMENT, INC. ("Extreme Land") was and still is a domestic business corporation organized and existing under the laws of the State of New York.

4. Upon information and belief, now at and at all times hereinafter mentioned, Defendants, RUSSEL BROACH III and JILL BROACH, were and still are residents of the State of New York, County of Orange.

## JURISDICTION AND VENUE

5. This Court has personal jurisdiction over the Defendants because this action concerns the availability of insurance coverage under a policy of insurance issued in the State of New York as it relates to an Underlying Incident that is alleged to have occurred in the State of New York, County of Orange.

6. This Court has subject matter jurisdiction over the instant action on the basis of diversity under 28 U.S.C. § 1332(a)(1) because the amount in controversy herein exceeds $75,000, and because this action arises between domiciliaries of different states.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the acts and/or omissions giving rise to the instant action occurred in the State of New York, County of Orange.

## THE UNDERLYING INCIDENT AND ACTION

8. On December 16, 2024, Defendants Russell Broach III and Jill Broach, filed a lawsuit in New York State Supreme Court, County of Orange, styled *Russell Broach III and Jill Broach v. Mark Wagner, Wagner Contracting LLC, Thaddeus J. Sobiech III, and Extreme Land Development, Inc.*, bearing Index No. EF010757-2024 (the "Underlying Action"). A copy of the Summons and Complaint filed in the Underlying Action is attached hereto as **Exhibit A**.

9. In the Underlying Action, Russell Broach III and Jill Broach (collectively "Broach") allege that on or about February 8, 2023, Underlying Action defendants, Mark Wagner,

Wagner Contracting LLC, Thaddeus J. Sobiech III, and Extreme Land Development, Inc., negligently, wantonly, and intentionally cut down approximately 63 trees on a portion of the plaintiffs' property without the plaintiffs' knowledge or permission to do the same. (Exhibit A ¶ 8).

10. Broach further alleges that the Extreme Land, "and/or their employees and/or agents, trespassed on the Broach's property on or about February 8, 2023, in order to cut down Broach's trees." (Exhibit A ¶ 12).

11. Finally, Broach alleges that "due to the wanton, reckless, and negligent acts of the defendants [*inter alia*, Extreme Land] the value of the plaintiffs' property has been decreased due to the loss of the natural buffer zone in an amount which is higher than any jurisdictional amount of any lower court." (Exhibit A ¶ 17).

12. In the Underlying Action, Broach requests "that they be granted treble damages and attorney's fees and costs against the defendants, in addition to other actual damages sustained by plaintiffs [Broach] due to defendants' [Extreme Land] cutting down approximately 63 of the Plaintiffs' trees." (Exhibit A ¶ 10).

13. Further, Mr. and Mrs. Broach are requesting "a permanent order that the Defendants, and/or their employees and/or agents do not come onto their property for any reason whatsoever." (Exhibit A ¶ 13).

14. Finally, Mr. and Mrs. Broach seek monetary damages for the devaluation of the plaintiffs' property due to the loss of the natural buffer zone. (Exhibit A ¶ 17).

## THE MICHIGAN MILLERS' POLICIES

**The CGL Policy**

15. Michigan Millers issued a Commercial General Liability Policy to named insured, Extreme Land Development, Inc., bearing policy number C 0530826 03 for the policy period from

3

February 25, 2022, to February 25, 2023 (the "CGL Policy"). A copy of the CGL Policy is attached hereto as **Exhibit B**.

16. The CGL Policy's insuring agreement which is found in the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** (CG 00 01 04 13) provides in pertinent part:

> **SECTION I – COVERAGES**
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1. **Insuring Agreement**
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
>    ***
>
>    c. This insurance applies to "bodily injury" and "property damage" only if:
>
>       **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

17. The CGL Policy's **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** (CG 00 01 04 13) also contains the following relevant exclusions for liability coverage:

> 2. **Exclusions**
>
> This insurance does not apply to:
>
> ***
>
> **j. Damage To Property**

"Property damage" to:

\*\*\*

**(5)** That particular part of real property on which you or any contractors or sub-contractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\*\*\*

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

18. The CGL Policy's **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** (CG 00 01 04 13) also contains the following relevant definitions:

**SECTION V – DEFINITIONS**

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

\*\*\*

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

5

>    **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

***

>    **17.** "Property damage" means:
>
>    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
>    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

***

>    **22.** "Your work":
>
>    **a.** Means:
>
>    **(1)** Work or operations performed by you or on your behalf; and

**The Umbrella Policy**

19. Michigan Millers also issued a Commercial Liability Umbrella Policy to named insured, Extreme Land Development, Inc., bearing policy number C 0702039 03 for the policy period from February 25, 2022, to February 25, 2023 (the "Umbrella Policy"). A copy of the Umbrella Policy is attached hereto as **Exhibit C**.

20. The Umbrella Policy's insuring agreement which is found in the **COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM** (CU 00 01 04 13) provides in pertinent part:

>    **SECTION I – COVERAGES**
>    **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
>    **1. Insuring Agreement**

    **a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend. But:

21. The Umbrella Policy's **COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM** (CU 00 01 04 13) also contains the following relevant exclusions:

    **2. Exclusions:**

    This insurance does not apply to:

            ***

    **m. Damage To Property**

    "Property damage" to:

            ***

    **(5)** That particular part of real property on which you or any contractors or sub-contractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

    **(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

    Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

22. The Umbrella Policy's **COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM** (CU 00 01 04 13) also contains the following relevant definitions:

**SECTION V – DEFINITIONS**

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

17. "Products-completed operations hazard":

b. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

\*\*\*
   (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

   (a) When all of the work called for in your contract has been completed.

   (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

\*\*\*

18. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\*\*\*

19. "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.

8

> \*\*\*
> **23.** "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.
> \*\*\*
> **24.** "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance".
> \*\*\*
> **28.** "Your work":
>
> **a.** Means:
>
> **(1)** Work or operations performed by you or on your behalf; and

23. The Michigan Millers CGL and Umbrella Policies are collectively referred to as the "Policies."

## **TENDER AND DISCLAIMER**

24. The Underlying Incident was tendered to Michigan Millers on or about July 28, 2023.

25. Michigan Millers undertook an investigation into the Underlying Incident.

26. On or about December 17, 2024, Michigan Millers received notice that the Underlying Action was filed.

27. By letter dated February 20, 2025, Michigan Millers promptly disclaimed coverage under the CGL and Umbrella Policies for the Underlying Action, including the Underlying Incident and claims arising therefrom (the "Disclaimer"). A copy of the Disclaimer is attached hereto as **Exhibit D**.

**AS AND FOR MICHIGAN MILLERS' FIRST CAUSE OF ACTION**

28.     Michigan Millers repeats, reiterates, and realleges the allegations contained in paragraphs "1" through "27" as if fully set forth herein.

29.     The Policies only provides coverage for "property damage" that is caused by an "occurrence."

30.     An "occurrence" means an accident.

31.     The Second Cause of Action in the Underlying Action alleges that, *inter alia, Extreme Land* trespassed on the Broach's property.

32.     Trespass is not an "occurrence."

33.     Therefore, the Policies do not provide coverage for the Second Cause of Action in the Underlying Action.

34.     Michigan Millers is entitled to a declaration that it does not have a duty to defend and/or indemnify Extreme Land under the Policies for the Underlying Action, Second Cause of Action.

**AS AND FOR MICHIGAN MILLERS' SECOND CAUSE OF ACTION**

35.     Michigan Millers repeats, reiterates, and realleges the allegations contained in paragraphs "1" through "34" as if fully set forth herein.

36.     The Policies only provides coverage for "property damage" that is caused by an "occurrence."

37.     An "occurrence" means an accident.

38.     The Underlying Action, Third Cause of Action, asserts economic loss due to the Extreme Land's faulty workmanship.

39.     The alleged decrease in the value of Broach's property does not constitute "property damage" caused by an "occurrence."

40.     Therefore, the Policies do not provide coverage for the Third Cause of Action in the Underlying Action.

41.     Michigan Millers is entitled to a declaration that it does not have a duty to defend and/or indemnify Extreme Land under the Policies for the Underlying Action, Third Cause of Action.

## AS AND FOR MICHIGAN MILLERS' THIRD CAUSE OF ACTION

42.     Michigan Millers repeats, reiterates, and realleges the allegations contained in paragraphs "1" through "41" as if fully set forth herein.

43.     The Policies include a "Damage to Property" exclusion (5), which is denoted in the CGL Policy as exclusion "j. (5)" and on the Umbrella Policy as exclusion "m. (5)", and provides that the CGL and Umbrella Policies do not provide coverage for "property damage" to that particular part of real property on which you are performing operations, if the "property damage" arises out of those operations.

44.     The Underlying Action alleges that Extreme Land was hired by Wagner Contracting LLC and Mark Wagner to cut down trees at the adjacent property.

45.     It is further alleged that as a result of Extreme Land's work, cutting down trees, Extreme Land recklessly, wantonly, and intentionally cut down trees on the Broach'ss property without Broach's knowledge or permission.

46.     The alleged "property damage" was to that part of real property that Extreme Land was performing operations on, the trees that were cut down.

47.     Thus, the "Damage to Property" exclusion (5) applies to remove coverage from the Policies for the Underlying Action, including the Underlying Incident and claims arising therefrom.

11

48. Therefore, the Policies do not provide coverage for the Underlying Action, including the Underlying Incident and claims arising therefrom.

49. Michigan Millers is entitled to a declaration that it does not have a duty to defend and/or indemnify Extreme Land under the Policies for the Underlying Action, including the Underlying Incident and claims arising therefrom.

50. Additionally, Michigan Millers is entitled to a declaration that it may withdraw from the courtesy defense that it is currently providing in the Underlying Action.

## AS AND FOR MICHIGAN MILLERS' FOURTH CAUSE OF ACTION

51. Michigan Millers reasserts and realleges each and every allegation contained in paragraphs "1" through "50" as if fully set forth herein.

52. The Policies include a "Damage to Property" exclusion (6), which is denoted in the CGL Policy as exclusion "j. (6)" and on the Umbrella Policy as exclusion "m. (6)", and provides that the Policies do not provide coverage for that particular part of real property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

53. The Underlying Action alleges that Extreme Land was hired by Wagner Contracting LLC and Mark Wagner to cut down trees at the adjacent property.

54. It is further alleged that as a result of Extreme Land's work, cutting down trees, Extreme Land recklessly, wantonly, and intentionally cut down trees on the Broach's property without the Broach's knowledge or permission.

55. The alleged "property damage" was the result of Extreme Land's work being incorrectly performed.

56. Further, it follows that the damaged property, the trees, must be restored, repaired or replaced as a result of Extreme Land's incorrectly performed work.

57. Thus, the "Damage to Property" exclusion (6) applies to remove coverage from the Policies for the Underlying Action, including the Underlying Incident and claims arising therefrom.

58. Therefore, the Policies do not provide coverage for the Underlying Action, including the Underlying Incident and claims arising therefrom.

59. Michigan Millers is entitled to a declaration that it does not have a duty to defend and/or indemnify Extreme Land under the Policies for the Underlying Action, including the Underlying Incident and claims arising therefrom.

60. Additionally, Michigan Millers is entitled to a declaration that it may withdraw from the courtesy defense that it is currently providing in the Underlying Action.

**WHEREFORE**, Plaintiff, MICHIGAN MILLERS INSURANCE COMPANY, respectfully request judgment:

(1) Declaring that MICHIGAN MILLERS INSURANCE COMPANY is not obligated to provide insurance coverage under the Policies to EXTREME LAND DEVELOPMENT, INC. for the Underlying Action, including the Underlying Incident and claims arising therefrom;

(2) Declaring that MICHIGAN MILLERS INSURANCE COMPANY does not have a duty to defend and/or indemnify Defendant, EXTREME LAND DEVELOPMENT, INC., under the Policies, for the Underlying Action, including the Underlying Incident and claims arising therefrom;

(3) Declaring that MICHIGAN MILLERS INSURANCE COMPANY may withdraw from the courtesy defense that it is currently providing the Defendant, EXTREME LAND DEVELOPMENT, INC., in the Underlying Action; and

(4) Such other and further relief as to this Court may find just, proper and equitable, together with the costs and disbursements of this action.

DATED:   Buffalo, New York
         March 31, 2025

                                              HURWITZ FINE P.C.

                                              By: _____
                                              Steven E. Peiper, Esq.
                                              *Attorneys for Plaintiff,*
                                              *MICHIGAN MILLERS INSURANCE*
                                              *COMPANY*
                                              The Liberty Building
                                              424 Main Street, Suite 1300
                                              Buffalo, New York 14202
                                              (716) 849-8900
                                              sep@hurwitzfine.com